IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| United States of America ) | |
| ) | |
| v. ) | |
| ) | 1:10cr29 (JCC) |
| Kyle Mathew McDonald ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Kyle Mathew McDonald's ("Defendant") Motion for Judgment of Acquittal or, in the Alternative, for a New Trial. For the reasons stated below, the Court will deny these motions.

### I. Background

Defendant was convicted by a jury on June 24, 2010, of two counts of making interstate threatening communication regarding Laura Chavez, in violation of 18 U.S.C. § 875(c). Ms. Chavez and Defendant dated from 2005 until late 2007, when Ms. Chavez ended the relationship. Defendant later learned that Ms. Chavez was involved in a relationship with another person. (Govt. Mem. at 2.) Defendant's subsequent communications towards Ms. Chavez resulted in stalking charges against him, as well as a protective order prohibiting him from having any contact with her. *Id.*

1

Defendant twice violated the order, first by sending Ms. Chavez a series of emails, and second, by sending an apology letter. (Def.'s Mem. at 5.) For these violations, Defendant was incarcerated at the Arlington County Detention Center. *Id.* While incarcerated, he made a series of phone calls to friends and family that were recorded by law enforcement. *Id.* Two of these calls, made on July 22 and August 4, 2009, to his father and sister, respectively, formed the basis of the two counts in this case. *Id.* at 6. Seven calls in total were played for the jury at trial. *Id.* At the end of trial, the Court instructed the jury as to the elements of 18 U.S.C. § 875(c) and the insanity defense.

Defendant now makes the following arguments for acquittal or a new trial:

(1) the two recorded communications did not constitute a "true threat" as required by 18 U.S.C. § 875(c);

(2) the Court should have instructed the jury that "the government must prove that [Defendant] intended the communication to be received by [Ms. Chavez] as a threat"; and

(3) the Court should have instructed the jury that, if found not guilty because of insanity, Defendant would be kept in a mental health

2

institution until the Court deemed him no longer a substantial risk to society.

The Court will examine these arguments in turn.

## II. Standards of Review

### A. Motion for a Judgment of Acquittal

Federal Rule of Criminal Procedure 29(c) provides, in relevant part, "if the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Where such a motion is based on "insufficiency of the evidence, the conviction must be sustained if the evidence, when viewed in the light most favorable to the Government, is sufficient for any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998); *see United States v. Church*, 11 F. App'x 264 (4th Cir. 2001).

When ruling on a Rule 29(c) Motion "the trial court should only consider the sufficiency of the evidence presented in that trial, not what evidence is likely to be admitted or excluded in a future trial." *United States v. Mackins*, 32 F.3d 134, 138-39 (4th Cir. 1994). The Government must be allowed "the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982) (citations omitted). "Furthermore, neither the district court nor the appellate court

should consider a witnesses' credibility, but must assume that the jury resolved all contradictions in favor of the Government." *Romer*, 148 F.3d at 364.

B. <u>Motion for a New Trial</u>

Federal Rule of Criminal Procedure 33 provides, in relevant part, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." The Fourth Circuit instructs that "a trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it." *United States v. Smith*, 451 F.3d 209, 216-17 (4th Cir. 2006) (citations omitted). Although a district court addressing a Rule 33 motion "is not constrained by the requirement that it view the evidence in the light most favorable to the government," such a motion should only be granted when "the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985).

### III. Analysis

A. <u>Did Defendant's Communications Qualify as "True Threats"?</u>

Defendant argues that his statements during the July 22 and August 4 phone calls--while "vile"--were not "true threats" as required for conviction under 18 U.S.C. § 875(c) (prohibiting transmission of threats in interstate commerce).

4

(Def.'s Mem. at 9). A true threat is a communication that "an ordinary, reasonable person . . . familiar with the context of the communication, would interpret . . . as a threat of injury." *United States v. Spring*, 305 F.3d 276, 280 (4th Cir. 2002). Defendant argues that facts surrounding the July 22 and August 4 calls show that he was merely "venting," and demonstrate that his statements can be interpreted in a non-threatening manner. (Def.'s Mem. at 11). "Generally what is and is not a true threat is a jury question." *United States v. Roberts*, 915 F.2d 889, 891 (4th Cir. 1990). This Court begins by noting that the conditions and context surrounding Defendant's statements were all presented to the jury, which was able to consider them in its reaching its conclusions.

Considering the reasonableness of those conclusions, this Court finds no cause to disturb the jury's verdict. Defendant's phone calls were replete with statements that an "ordinary, reasonable person" could "interpret as a threat of injury."[1] *See Spring*, 305 F.3d at 280. For example, Defendant said on the July 22 call, "She is right now, on my death list. She is absolutely, the first thing I do when I get out of here is going after her." Defendant also said, "I will f***ing mow people down. I mean I will mow down loads of people . . . any

---

[1] While the transcripts of the phone calls were not admitted to evidence and are not part of the trial record, it is this Court's recollection from trial that those transcripts are accurate representations of the calls, and this Court relies upon them here.

5

people around her is going down. There's a good chance that the whole f***ing WJLA studio goes down. I mean it's not good. It's not good. It's not good. I walk into her party, I'm taking out everyone at the party."

Most tellingly, *both* recipients of the phone calls--Defendant's father and sister--made their opinions clear during those calls that Defendant's words were threats.[2] On the July 22 call, after Defendant asked his father "is she really willing to die," and told his father what a "dangerous course of action" she was taking, his father pointed out that Defendant could face an additional "fifteen years" in prison for the things he was saying on the phone. Defendant's response: "I don't give a s***. . . . In fifteen years when she has eight year old kids or nine year old kids and I'll kill them too. So what?"

On the August 4 call, Defendant told his sister that, among other things, "If there's not peace, I'm gonna track her down and find her because she destroyed my life." Defendant's sister responded, "Kyle I'm not going to keep talking to you if you keep talking about threatening her." To which he said, "I'm not threatening her. I'm not threatening her. I promise you." Her response: "*Yea you are.*" (emphasis added).

---

[2] To be clear, this does not mean that this Court relies on the subjective judgments of Defendant's father and sister. Rather, their reactions can be taken into account in making the objective determination of whether an ordinary, reasonable person would consider Defendant's statements to be true threats.

6

Defendant's father and sister were well aware of the circumstances facing Defendant at the time he made these statements and they still interpreted those statements as threats. It was reasonable for the jury, knowing the same facts and hearing the same words, to reach the same conclusion. This Court will therefore deny Defendant's motions on this ground.

B. Does 18 U.S.C. § 875(c) Require Specific Intent?

Defendant argues that the jury should have been instructed that it could only convict him if it found that he "intended the communication to be received by Laura Chavez as a threat." (Def.'s Mem. at 14.) Defendant claims such an instruction was warranted because there was no "evidence that [he] intended the substance of these calls to be received by Ms. Chavez." *Id.* Rather, claims Defendant, these were private communications to family regarding private matters. *Id.*

The Fourth Circuit draws no such distinction. It has made clear, after acknowledging a circuit split on the issue, its opinion that "section 875(c) requires only general intent to threaten." *United States v. Darby*, 37 F.3d 1059, 1066 (4th Cir. 1994). In other words, "[t]he government does not have to prove that the defendant subjectively intended for the recipient to understand the communication as a threat." *Id.* This Court was therefore required by precedent not to instruct the jury

that specific intent was required for a conviction. This Court will therefore deny Defendant's motions on this ground.

### C. Was a Jury Instruction Required that an Insanity Finding Would Still Result in Confinement?

Defendant argues that the jury should have been instructed that finding the Defendant not guilty by reason of insanity ("NGRI") would mean that the Defendant would still be confined for treatment. (Def.'s Mem. at 14.) Defendant claims the absence of such an instruction might have caused the jurors--possibly unfamiliar with the consequences of a NGRI finding--to convict out of fear that the Defendant would "go free." *Id.* at 15.

Such an instruction "is not to be given as a matter of general practice." *Shannon v. United States*, 512 U.S. 573, 579 (1994). The principle guiding its disfavor is that "when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed." *Id.* at 587. Yet, the Supreme Court notes that in certain circumstances of misstatement or error, such as one where a witness or prosecutor states in front of the jury that a defendant would "go free" if found NGRI, the instruction may be called for. *Id.*

Defendant points to no such erroneous statement. Defendant instead argues that this case calls for an exception because the charges involved threats, meaning that the jury

8

would feel particularly compelled to convict to prevent a future harm (*i.e.*, the realization of the threats). (Def.'s Mem. at 15.) To the extent *Shannon* does not foreclose such an exception outright (because it would not be based on any error or misstatement at trial) this Court finds it unwarranted here.

Those accused of breaking the law are, by definition, considered dangerous to society. "Although it may take effort on a juror's part to ignore the potential consequences of a verdict," our criminal justice system functions on an "almost invariable assumption . . . that jurors follow their instructions." *Shannon*, 512 U.S. at 585. Defendant's proposed rule, applied generally, would require Courts to ignore this principle and to instead delve into gradations of perceived dangerousness, to determine which defendants jurors will be most likely to convict on fear alone. This Court declines to sanction such an undertaking. This Court will therefore deny Defendant's motions on this ground.

### IV. Conclusion

For these reasons, the Court will deny Defendant's motions.

September 27, 2010  
Alexandria, Virginia

/s/  
James C. Cacheris  
UNITED STATES DISTRICT COURT JUDGE