IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| United States of America | ) |
| | ) |
| v. | ) |
| | ) 1:10cr29 (JCC) |
| Kyle Mathew McDonald | ) |
| | ) |
| Defendant. | ) |

## S E N T E N C I N G   M E M O R A N D U M

This matter is before the Court on the sentencing of Defendant Kyle Mathew McDonald ("Defendant"). Pursuant to the United States Sentencing Guidelines, U.S.S.G. § 1A1.1, *et seq* (the "Guidelines"), the United States Probation Office issued a pre-sentence report (the "PSR"). Defendant's guideline range is 14-IV, resulting in a range of 27-33 months of imprisonment. Defendant submitted his Position on Sentencing ("Def.'s Memo.") on October 15, 2010, arguing for a reduced sentence due to acceptance of responsibility (Def.'s Memo. at 3), diminished capacity, *id.* at 6, and an improper criminal history calculation, *id.* at 9.

### I. Analysis

Sentences are imposed in accordance with 18 U.S.C. § 3553(a). The Guidelines calculations are just one factor the Court takes into consideration when sentencing. *Kimbrough v.*

*United States,* 552 U.S. 85 (2007), and *Gall v. United States*, 552 U.S. 38 (2007).  I understand that I am free to depart upwards or downwards from the guidelines range and to grant variances as permitted by *Gall*.  *See* 552 U.S. at 45.  I also understand that, under *United States v. Nelson*, 129 S. Ct. 890, 892 (2009), a sentencing court may not presume that a sentence within the applicable guidelines range is presumptively reasonable.

Section 3553(a) of Title 18 lists several factors for the Court to consider in imposing a sentence.  Relevant here, 18 U.S.C. § 3553(a) provides that "[t]he court, in determining the particular sentence to be imposed, shall consider . . . the nature and circumstances of the offense and the history and characteristics of the defendant."  Section 3553(a) also provides that the court shall consider the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

A.  <u>Acceptance of Responsibility</u>

Defendant first seeks credit for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a).  That provision

applies where "the defendant clearly demonstrates acceptance of responsibility for his offense." *Id.* Appropriate considerations include: "truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any relevant conduct for which the defendant is accountable under § 1B1.3." *Id.* at Application Note 1(a). Application Note 2 further states:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial *to assert and preserve issues that do not relate to factual guilt* (e.g., to make a constitutional challenge to a statute or *a challenge to the applicability of a statute to his conduct*). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

(emphasis added). A defendant bears the burden of proving that he is entitled to this reduction by a preponderance of the evidence. *United States v. Harris*, 882 F.2d 902, 907 (4th Cir. 1989).

The conduct at issue here involves a series of phone calls Defendant made from prison to his ex-girlfriend. Because

of statements made during those calls, Defendant was charged with transmitting threats in interstate commerce in violation of 18 U.S.C. § 875(c). He pleaded not guilty by reason of insanity, but never disputed having made the calls at issue. Defendant argues that, because he admitted making those calls and merely challenged the legal conclusion that those calls constituted "true threats," he accepted responsibility.

He cites a number of cases for the point that a plea of not guilty by reason of insanity does not preclude a finding of acceptance of responsibility. One case he does not cite, but which casts doubt on that claim, is *McWee v. Weldon*, 283 F.3d 179 (4th Cir. 2002). There, the defendant argued that his attorneys' failure to present an insanity defense constituted ineffective assistance of counsel. *Id.* at 187. In rejecting this claim, the Court stated that "an insanity defense would have hindered [the defendant's] efforts to use his expressions of remorse and acceptance of responsibility for what he had done as a potential mitigating circumstance" during sentencing. *Id.* Indeed, "[h]ad [the defendant's] attorneys argued before the jury that [the defendant] was insane, and incapable of distinguishing moral or legal right from moral or legal wrong at the time [of the crime], [the defendant's] post-conviction expressions of remorse and acceptance of responsibility would have lacked credibility." *Id.* These statements do not

affirmatively hold that an insanity defense bars a finding of acceptance of responsibility, but they suggest that that is this Circuit's position.

Defendant relies primarily on *United States v. Fells*, 78 F.3d 168 (5th Cir. 1996), a case where the defendant, convicted for being a felon in possession of a firearm, appealed the district court's denial of an acceptance of responsibility finding. The defendant there admitted possession of a firearm as a general matter and did not dispute any material facts about his case. *Id.* at 172. He pled not guilty, however, arguing that his being intercepted at a connecting point between flights, when his firearm was in checked luggage, meant that the airline possessed the firearm while he was within the relevant jurisdiction, not him. *Id.* at 172. The Fifth Circuit found that this venue argument did not automatically preclude acceptance of responsibility. *Id.*

A better comparison with the instant case would be with *United States v. Morrison*, 10 F. App'x 275 (6th Cir. 2001). There, the defendant was charged with bank robbery, the statute for which began, "Whoever, by force and violence, *or by intimidation*, takes . . . ." *Id.* at 280 (quoting 18 U.S.C. § 2113(a) (emphasis added)). The defendant admitted having unlawfully taken money from a bank, but he challenged whether he had acted "in an intimidating manner." *Id.* The Court noted a

5

critical distinction from *Fells*: "Forcing the government to prove the factual element of intimidation and that the admitted acts legally constituted 'intimidation' is tantamount to forcing the government to prove that the defendant committed the acts for which he was indicted." *Id.* In other words, a challenge to a finding of "intimidation," unlike *Fells's* venue challenge, was a challenge to factual guilt *as well as* to the legal application of a statute to the conduct at issue. *Id.* at 285-86; *see also United States v. Farias*, 469 F.3d 393, 400 (5th Cir. 2006). Challenges to factual guilt are not one of the "rare exceptions" permitted under U.S.S.G. § 3E1.1(a).

Defendant here challenged factual guilt. When he argued that his statements were not "true threats," claiming that they were mere venting, he not only challenged the legal application of 18 U.S.C. § 875(c) to conduct he admitted, he challenged his factual guilt. Indeed, defense expert Dr. Anita Boss stated in her report that Defendant still thinks his actions were not wrongful and that they were expressive of his feelings. (PSR at 25, ¶ 77.) This Court therefore will not equate acceptance of responsibility for making the calls with acceptance of responsibility for the threatening content of those calls.

This Court will therefore deny Defendant's requested credit for acceptance of responsibility.

B. <u>Diminished Capacity</u>

Defendant next argues for a downward departure under U.S.S.G. § 5K2.13, citing the portion that states, "[A] downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." Defendant does not cite, however, the words that immediately follow: "However, the court may not depart below the applicable guideline range if . . . the facts and circumstances of defendant's offense indicate a need to protect the public because the offense involved . . . a serious threat of violence. *Id.*

Remembering that Defendant was convicted of sending *threatening* communications, and remembering the particular communications sent in this case, the Guidelines' admonition that the Court not depart downwards where the offense indicates a serious threat of violence is particularly implicated in this case. For example, Defendant said on the July 22 call, "She is right now, on my death list. She is absolutely, the first thing I do when I get out of here is going after her." Defendant also said, "I will f***ing mow people down. I mean I will mow down loads of people . . . any people around her is going down. There's a good chance that the whole f***ing WJLA studio goes

down. I mean it's not good. It's not good. It's not good. I walk into her party, I'm taking out everyone at the party." And he said, "In fifteen years when she has eight year old kids or nine year old kids and I'll kill them too. So what?"

These statements provide more than enough indication of a need to protect the public from a serious threat of violence. Indeed, to reach that conclusion, this Court need look no further than defense expert Dr. Anita Boss's report, which stated:

> His potential for harm to others is also of substantial concern because he has continued to make threats while incarcerated . . . . He has gone to the extreme in threatening to find and kill his ex-girlfriend and her children if he is incarcerated for 15 years and then released.

Defendant cites *United States v. Weddle*, 30 F.3d 532 (4th Cir. 1994), for the proposition that "the nature of Mr. McDonald's charge does not preclude a diminished capacity downward departure." (Def.'s Mem. at 9.) That case is no longer good law; it applied a version of U.S.S.G. § 5K2.13 that was amended in 1998. That older version did not ask whether the charged offense involved a serious threat of violence, rather, it simply asked whether it was violent or non-violent. The Court ruled in *Weddle* that the offense of mailing threatening communications was a non-violent offense, therefore permitting a downward departure. *Id.* at 540. But it did not find that

8

mailing threatening communications does not "indicate a need to protect the public" from "a serious threat of violence," as the Guidelines now state.

This Court therefore will deny Defendant's motion for a downward departure based on diminished capacity.

C.      <u>Criminal History</u>

Defendant also argues that his placement in Category IV over-represents the seriousness of his criminal history, justifying a downward departure under U.S.S.G. § 4A1.3(b)(1). That provision states: "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." *Id.* The gist of Defendant's argument is that his criminal history prior to June, 2008--when he began the downward spiral of criminal behavior relating to his failed relationship that led to the instant case--is sparse. (*See* Def.'s Mem. at 10.) Indeed, Defendant cites *United States v. Williams*, 432 F.3d 621, 622 (6th Cir. 2005), a case in which the defendant's criminal history mainly stemmed from conduct a decade before the charges at issue, for the proposition that timing matters when considering criminal history.

Defendant's case citation and overall argument seem to misunderstand the relevant guideline.  Application Note 3 explains: "A downward departure from the defendant's criminal history category may be warranted if, for example, the defendant had two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period."  The Background Application Note further explains that an older defendant should not be overly penalized for actions taken long in the past that do not particularly evidence a likelihood of recidivism.  That is why, in *Williams*, the downward departure was justified.

That is the opposite of Defendant's situation in this case.  The fact that his criminal history consists almost entirely of *recent* and *related* actions stemming from his failed relationship counsels strongly *against* a downward departure.  This Court will therefore deny Defendant's motion to vary from his Category IV criminal history score.

## II. Conclusion

For these reasons, the Court will deny Defendant's requested grounds for variance.

The Court will sentence Defendant to 30 months imprisonment on Counts I and II to run concurrently; and to three years of supervised release on each Count, also to run concurrently.  This Court will give credit for time served in

the federal system.  Upon release from imprisonment the Defendant shall participate in a substance abuse program approved by the probation officer that may include residential treatment and testing to determine whether he reverts to the use of drugs or alcohol.  He shall also participate in a program approved by the probation officer for mental health treatment.  Defendant shall thirdly comply with the requirements of a computer monitoring program as administered by the probation office, and as explained in open court.

In the alternative, this Court would impose the same sentence with or without a finding of acceptance of responsibility, diminished capacity, or improper criminal history calculation, because in its view, after considering all of the 3553(a) factors including the nature and circumstances of the offense and the history and characteristics of the defendant, this Defendant poses a significant danger to the public.

```
                              _____/s/_____
October 26, 2010                     James C. Cacheris
Alexandria, Virginia       UNITED STATES DISTRICT COURT JUDGE
```